UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| IRIS NELSON, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 3:11-CV-00311 |
| | § | |
| HITCHCOCK INDEPENDENT | § | |
| SCHOOL DISTRICT, | § | |
| | § | |
| Defendant. | § | |

## **MEMORANDUM AND ORDER**

When Head Start students arrived for the start of the 2009–2010 school year in Hitchcock, Texas, Ms. Nelson was missing. Ms. Nelson was missing because she had requested leave to undergo her second knee replacement surgery that calendar year. But Defendant Hitchcock Independent School District denied the leave request, noting that Ms. Nelson had already exhausted her allotted family medical leave for the first surgery, and terminated her.

In June 2011, Ms. Nelson filed this lawsuit challenging her termination under the Americans with Disabilities Act, alleging that Hitchcock ISD failed to accommodate her disability by refusing to provide her with extended leave, or, in the alternative, by prohibiting her from using crutches, a walker, or pain medication. She also alleged that Hitchcock violated Title VII by firing her in retaliation for "opposing a discriminatory practice" against the former Head Start

director.  Hitchcock ISD now seeks summary judgment.  Having reviewed the parties' briefing, the evidence, and the applicable case law, the Court **DENIES** Hitchcock ISD's motion with respect to the ADA claims because genuine issues of material fact exist, including whether Hitchcock ISD engaged in the "interactive process" required to determine whether a reasonable accommodation existed for Ms. Nelson's disability.  The Court **GRANTS** the motion with respect to the Title VII claims, however, because Ms. Nelson has failed to present evidence that she engaged in activity protected by Title VII.

## I.  BACKGROUND

### A.  Facts Relating to the ADA Claim

Ms. Nelson began working for the Head Start program as a teacher's aide in 1996.  In February 2009, she was diagnosed with severe bilateral knee arthritis, which required knee replacement surgery for both legs.  Ms. Nelson took medical leave for right knee surgery from February 24, 2009 until May 26, 2009, for a total of 59 days—one day short of the twelve-week leave period guaranteed under the Family Medical Leave Act.  Docket Entry No. 19-1, Exs. A ¶ 2, A-2.  Under Hitchcock ISD's Board Policy DEC (Local), the FMLA year for an employee starts on the day that the employee's first covered leave begins.  Docket Entry No. 19-1, Ex. A-3 at 3.  Thus, Ms. Nelson's FMLA year ran from February 24, 2009 to February 23, 2010.

On August 11, 2009, before the new school year started, Ms. Nelson met with Theresa Fails, the Payroll and Benefits Supervisor for Hitchcock ISD, to request roughly two-and-a-half months off for surgery on her left knee. Fails informed Ms. Nelson that she had no remaining family medical leave and would not be eligible for more until the following year.

The parties dispute what else was said at the meeting. According to Ms. Nelson, she responded that instead of undergoing surgery at that time, she "would just have to work using [a] cane or walker," but Fails said she could not use them. Docket Entry Nos. 22-14 ¶ 9; 22-4 at 24:13–19. Ms. Nelson attests that she then said she would "just take pain pills," but Fails refused again and noted that the school would test her for drugs. Docket Entry Nos. 22-14 ¶ 10; 22-4 at 24:20–25:7. Hitchcock ISD, on the other hand, presents affidavit testimony from Fails that she did not prohibit Ms. Nelson from using a walker or pain pills, but merely expressed her safety concerns about using those aids while supervising small children. *See* Docket Entry No. 19-1, Ex. A ¶ 5. Fails also suggests in her affidavit that Ms. Nelson planned to undergo surgery regardless, and that the discussion regarding a walker and pain pills only pertained to Ms. Nelson's desire to work from August 17, 2009, the day when teachers were to report for classroom preparation, until her surgery the next week. *Id.* Indeed, at the time of their meeting, Ms. Nelson had already booked her surgery and been told by her doctor

that surgery could not wait.  Docket Entry Nos. 19-3, Ex. C at 16:4–7; 24-2 at 15:6–20.  However, a statement from Fails to the Equal Employment Opportunity Commission is more consistent with Ms. Nelson's depiction of events: "I informed Ms. Nelson that if she could wait until February 2010 her FMLA would renew one year after the first surgery.  Ms. Nelson replied she could maybe work taking pain killers and using a walker or crutches."  *See* Docket Entry No. 22-3.

After the meeting, Fails sent an e-mail to Betty Martins, the interim Head Start director, and copied Dr. Mike Bergman, the school superintendent.  *See* Docket Entry No. 22-10.  Fails described the conversation and concluded: "Until a Doctor's note can be obtained and a decision made…I recommend she not be allowed to return or be on the campus grounds."  *Id.*  Ms. Nelson denies that she was asked to provide a doctor's note in order to obtain leave.  Docket Entry No. 24-2 at 22:22–23:7.

Without hearing anything further from Hitchcock ISD, Ms. Nelson returned to work on August 17, 2009, the week before students arrived.  That same day, she filed a "Request for Leave" form, seeking "[a]bout 2½ months" of leave starting August 20, 2009.  Docket Entry No. 19-2, Exs. B ¶ 3, B-1.  The proper Hitchcock ISD administrator apparently did not receive the form until August 24, 2009.  Docket Entry No. 19-2, Ex. B-1.  Ms. Nelson worked that week without a walking aid—purportedly because she thought she was not allowed to use one—although

no children were present and her responsibilities were limited to preparing the classroom.  Docket Entry No. 22-14 ¶¶ 11–14.  Without having received a response from any Hitchcock ISD official about the status of her leave request, Ms. Nelson unilaterally took leave and underwent surgery on August 23, 2009.

On August 25, 2009, Hitchcock ISD's superintendent wrote a letter to Ms. Nelson denying her leave request, noting that she had exhausted her FMLA entitlement.  Docket Entry No. 19-2, Ex. B-2.  On August 31, 2009, he sent her a notice of termination, informing Ms. Nelson that her "employment with Hitchcock ISD has been terminated for being unable to perform the essential functions of your job."  Docket Entry No. 19-2, Ex. B-3.

**B.  Facts Relating to the Retaliation Claim**

Ms. Nelson's retaliation claim arises out of assistance she provided Doreatha Walker, the former director of the Head Start program.  While Ms. Nelson was on leave for the first knee surgery, Walker asked her to write a letter to the superintendent explaining that Walker had not written her up for an incident involving a child running away.  Docket Entry Nos. 19-3 at 37:6–39:18.  Ms. Nelson wrote the letter on April 29, 2009.  Docket Entry No. 22-8.[1]  Walker

---

[1] The body of the letter states in full: "When Mrs. Walker and I had that conversation about a child running away, there was no one around.  I talked to her for myself cause I figured I would have gotten written up, by someone for him running from me."  Docket Entry No. 22-8.

intended to use the letter to refute allegations that she had mistreated employees. *See* Docket Entry No. 22-16 ¶¶ 5–6.

After being placed on a leave of absence, Walker filed numerous lawsuits against Hitchcock ISD, including a whistleblower suit—in which Ms. Nelson testified—and a race discrimination and retaliation suit, which involved a separate whistleblower claim. Hitchcock ISD contends that Ms. Nelson's letter and testimony were restricted to the first whistleblower suit, but Walker and Ms. Nelson maintain that the suits were intertwined and the "assistance" extended to the race discrimination claim. Ms. Nelson admits that when she wrote the letter, Walker had not told her of any race discrimination allegations and she had no understanding of Walker's dispute with Hitchcock ISD. Docket Entry No. 19-3 at 36:15–37:5. She also admits that she never spoke to the EEOC on Walker's behalf. Docket Entry No. 22-4 at 41:8–11.

When asked at her deposition why she thought writing the letter caused her termination, Ms. Nelson responded that: (1) her problems with Hitchcock ISD only started after she wrote the letter; (2) she heard second-hand that other employees were told not to write a letter if they valued their jobs; and (3) another employee who wrote the letter—and was not fired—"has been catching hell ever since." *Id.* at 41:18–43:6. But Ms. Nelson concedes that nobody at Hitchcock ISD ever talked

to her about the letter or about her involvement with Walker and Walker's disputes. *Id.* at 43:7–13.

## II.  STANDARD OF REVIEW

When a party moves for summary judgment, the reviewing court shall grant the motion "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All reasonable doubts on questions of fact must be resolved in favor of the party opposing summary judgment. *See Evans v. City of Houston*, 246 F.3d 344, 348 (5th Cir. 2001) (citation omitted).

## III.  DISCUSSION

### A.  The ADA Claim

Title I of the ADA provides that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability . . . ." 42 U.S.C. § 12112(a). The Act defines such discrimination to include "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an . . . employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." *Id.* § 12112(b)(5)(A).

The Act further defines a "qualified individual" as "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." *Id.* § 12111(8).

The parties agree that Hitchcock ISD is a covered entity and that Ms. Nelson had a disability; the only question is whether Hitchcock ISD failed to make reasonable accommodations that would have allowed Ms. Nelson to perform the essential functions of a Head Start classroom aide.[2]  "An employee who needs an accommodation because of a disability has the responsibility of informing her employer." *EEOC v. Chevron Phillips Chem. Co.*, 570 F.3d 606, 621 (5th Cir. 2009) (citing *Taylor v. Principal Fin. Grp.*, 93 F.3d 155, 165 (5th Cir. 1996)). Once that happens, the employer must engage in an "interactive process"—*i.e.*, "a meaningful dialogue with the employee to find the best means of accommodating [the] disability." *Id.* (quoting *Tobin v. Liberty Mut. Ins. Co.*, 433 F.3d 100, 108 (1st Cir. 2005)). "When an employer does not engage in a good faith interactive process, that employer violates the ADA—including when the employer discharges the employee instead of considering the requested accommodations." *Id.* (citing *Cutrera v. Bd. of Supervisors of La. St. Univ.*, 429 F.3d 108, 113 (5th

---

[2] In addition to the accommodation claim, Ms. Nelson asserts a separate discrimination claim based on "Fails' act of declaring Nelson 'unsafe.'" Docket Entry No. 22 ¶ 18.  The Court rejects this claim to the extent it is different from the accommodation claim; the mere act of perceiving an employee as unsafe does not constitute the type of "adverse employment action" required for liability under the ADA.  *See McInnis v. Alamo Cmty. Coll. Dist.*, 207 F.3d 276, 279–80 (5th Cir. 2000) (listing the factors of an ADA claim).

Cir. 2005)). "An employer may not stymie the interactive process of identifying a reasonable accommodation for an employee's disability by preemptively terminating the employee before an accommodation can be considered or recommended." *Cutrera*, 429 F.3d at 113.

The Court finds that a fact issue exists concerning whether Hitchcock ISD engaged in this ADA-required interactive process. It is undisputed that Ms. Nelson informed her employer of her disability and need for an accommodation when she met with Fails on August 11, 2009. Regardless of Fails's lack of "authority to make any decisions on this issue," Docket Entry No. 19 at 11, Hitchcock ISD's relevant decisionmakers were also aware of Ms. Nelson's situation, as Fails sent an e-mail to the program's director and the superintendent on the day of her meeting with Ms. Nelson. *See* Docket Entry No. 22-10; *see also Chevron Phillips*, 570 F.3d at 609–10, 621–22 (finding fact issue where employee requested an accommodation from "a customer service manager who supervised her work," who then e-mailed the information to a human resources employee). The director even saw Ms. Nelson at work on the week of August 17, 2009, but failed to address Ms. Nelson's situation. *See* Docket Entry No. 19-3, Ex. C at 26:12–27:7. Hitchcock ISD never engaged in the "communication and good-faith exploration" of accommodation requests that the ADA requires. *Chevron Phillips*, 570 F.3d at 621 (quoting *Kleiber v. Honda of Am. Mfg.*, 485 F.3d 862, 871 (6th Cir. 2007)).

Hitchcock ISD argues that (1) the request for a walking aid or pain pills only pertained to "a few days" in August 2009 because Ms. Nelson had already scheduled surgery for August 23, 2009; and (2) the request for an extra two-and-a-half months of leave for surgery was unreasonable.[3]  Docket Entry No. 19 at 3. But Ms. Nelson presents sufficient evidence that she would have postponed surgery had she been afforded an accommodation.  First, Fails's letter to the EEOC, quoted above, explicitly states that Ms. Nelson presented the idea of working with pain pills and a walker or crutches until she was eligible for more FMLA leave.  Docket Entry No. 22-3.  Second, Ms. Nelson's affidavit states that she offered to use a cane or walker when told she had no remaining leave and offered to use pain pills when told she could not use a cane or walker.  Docket Entry No. 22-14 ¶¶ 9–10.  Finally, Fails's expressed concern about the requested pain-killer accommodation—that a medicated classroom aide may pose a safety risk to the young children—makes little sense if the accommodation discussion was limited to the period before Ms. Nelson's surgery because students would not be present during those few days of teacher preparation.  Thus, given that a jury could conclude from the evidence that Ms. Nelson would have waited for surgery

---

[3] For the argument that a lengthy extended leave is unreasonable, Hitchcock ISD cites *Roberts v. Unitrin Specialty Lines Ins. Co.*, 405 F. App'x 874 (5th Cir. 2010); *Harville v. Tex. A&M Univ.*, 833 F. Supp. 2d 645, 661 (S.D. Tex. 2011); *Wood v. Green*, 323 F.3d 1309 (11th Cir. 2003); *Dogmantis v. Capital Blue Cross*, 413 F. Supp. 2d 452, 461–62 (E.D. Pa. 2005); and *Reifer v. Colonial Intermediate Unit 20*, 462 F. Supp. 2d 621, 635–36 (M.D. Pa. 2006).  *See* Docket Entry No. 19 at 12.

until she had sufficient FMLA leave if she had received other accommodations, the Court need not determine the reasonableness of an extended leave.

Similarly, the Court need not determine whether the use of a walking aid or pain pills would have been a reasonable accommodation. While the Court agrees that Hitchcock ISD raises serious doubts about the wisdom of supervising a classroom of children under the influence of certain pain medication, the ADA-mandated interactive process that was ignored in this case is designed to gather the information that allows for such an assessment to be made. Had the district engaged in the interactive process, it could have clarified whether Ms. Nelson needed a walker, pain medication, or both.[4] *See* Docket Entry No. 22-4 at 49:21–50:9 ("[I]f I could have worked using my cane, I mean, people work with canes and walkers every day. It don't mean I couldn't do my job."). If it turned out that Ms. Nelson required pain medication as part of any accommodation, the interactive process would have enabled the district to discover whether over-the-counter medication would suffice. If prescription pain relievers were required, the district could have explored the required dosages and the associated side effects. The answers to these questions may well have provided Hitchcock ISD with the information that would allow it to reasonably conclude that Ms. Nelson's requested

---

[4] Fails contends that she inquired further by asking for a doctor's note, but Ms. Nelson directly rebuts this, and the Court must construe facts in favor of the nonmovant for purposes of summary judgment. *See Evans*, 246 F.3d at 348.

accommodations would "impose an undue hardship on the operation" of Head Start. 42 U.S.C. § 12112(b)(5)(A). But Hitchcock ISD's silence following Ms. Nelson's meeting with Fails is sufficient for a jury to conclude that Hitchcock ISD refused Ms. Nelson's requested accommodations without giving them the consideration that the ADA requires. *See Chevron Phillips*, 570 F.3d at 622 (ruling that employee's testimony that employer "remained silent and made no comment on the requested accommodations" was sufficient to survive summary judgment).

### B. The Retaliation Claim

To establish a prima facie retaliation claim, Ms. Nelson must prove that: (1) she engaged in an activity that Title VII protects; (2) Hitchcock ISD carried out an adverse employment action; and (3) a causal nexus exists between her protected activity and Hitchcock ISD's adverse action. *Harvill v. Westward Commc'ns, L.L.C.*, 433 F.3d 428, 439 (5th Cir. 2005). An employee has engaged in activity protected by Title VII if she has either "opposed any practice made an unlawful employment practice by [Title VII]" or "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C.A. § 2000e-3(a). Additionally, retaliation includes instances when an employer takes adverse action against an employee to punish another employee who engaged in protected activity. *Thompson v. N. Am. Stainless, LP*,

131 S. Ct. 863, 870 (holding that an employee who was allegedly terminated in retaliation for his fiancée filing a discrimination charge with the EEOC fell within the zone of interests protected by Title VII).[5]

Ms. Nelson has failed to present evidence that would allow a jury to reasonably conclude that she engaged in activity that Title VII protects. Ms. Nelson's argument that she opposed an unlawful employment practice by writing a letter for Doreatha Walker on April 29, 2009 is not enough to withstand summary judgment.[6] First, there is no connection between the four corners of the letter and a Title VII dispute. The letter pertains to Walker's and Ms. Nelson's handling of an incident where a child ran away; it does not mention discrimination. *See* Docket Entry No. 22-8. Though a letter like Ms. Nelson's could potentially be considered protected activity if it were drafted to combat a discriminatory pretext, such is not the case here. Ms. Nelson admitted that when she drafted the letter, Walker had not told her of any race discrimination allegations and she had no understanding of Walker's dispute with Hitchcock ISD. Docket Entry No. 19-3 at 36:15–37:5; *see also Long v. Eastfield Coll.*, 88 F.3d 300, 304 (5th Cir. 1996) ("The opposition clause of § 2000e-3(a) requires the employee to demonstrate that she had at least a

---

[5] Ms. Nelson does not raise a *Thompson*-type claim, but instead relies on the letter she wrote and testimony she provided regarding Walker. *See Thompson*, 131 S. Ct. at 870.

[6] The parties also note that Ms. Nelson testified in a whistleblower lawsuit brought by Walker, but that testimony occurred in July 2011—nearly two years after Ms. Nelson's termination—and, therefore, could not have been the basis of any adverse employment action against Ms. Nelson. *See* Docket Entry No. 19-2, Ex. B-5.

'reasonable belief' that the practices she opposed were unlawful." (citing *Payne v. McLemore's Wholesale & Retail Stores*, 654 F.2d 1130, 1140 (5th Cir. 1981))). Ms. Nelson cites no cases, and the Court is aware of none, in which a federal court has construed Title VII to protect activity that neither facially pertains to discrimination nor was made with awareness of the activity's connection to an employment practice prohibited by Title VII.

Second, Ms. Nelson fails to present sufficient evidence showing how her letter was used in Walker's race discrimination charge or lawsuit against Hitchcock ISD. Walker offers affidavit testimony that she used the letter in her race discrimination charge to rebut Hitchcock ISD's claim that she was insubordinate and mistreated employees. Docket Entry No. 22-16 ¶ 12. But a review of the record shows that Walker did not use the letter for her race discrimination grievance or suit, but instead for her first whistleblower suit. Indeed, Ms. Nelson testified in Walker's first lawsuit, which did not include a race discrimination claim, but did not testify in Walker's second lawsuit, which did include a race discrimination claim. *Compare* Docket Entry No. 19-2, Exs. B-4, B-5, *with* Docket Entry Nos. 22-11; 22-12. And Ms. Nelson provides no evidence showing when the letter was produced in the race discrimination matter or how and when the Hitchcock ISD officials who terminated her would have learned about it. When taken as a whole, these defects in the first element of Ms. Nelson's

retaliation claim establish, as a matter of law, that she did not engage in Title VII protected activity.

## IV.  CONCLUSION

For the reasons above, Hitchcock Independent School District's motion for summary judgment (Docket Entry No. 19) is **DENIED IN PART** and **GRANTED IN PART**.  The Court **DENIES** Hitchcock ISD's motion with respect to Ms. Nelson's ADA claim and **GRANTS** the motion with respect to the Title VII claim.[7]

SIGNED this 21st day of December, 2012.

_____
Gregg Costa
United States District Judge

---

[7] The Court also **DENIES** the Motion to Strike Hitchcock ISD's Summary-Judgment Evidence contained in Ms. Nelson's summary judgment response (Docket Entry No. 22).  The Court does not find the disputed testimony to be inconsistent, and, in any event, the Court did not rely on that testimony in reaching its holding.